IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UCB SOCIETE ANONYME, and
UCB PHARMA, INC.,

                              Plaintiffs,

      v.                                          1:04-cv-683-WSD

MYLAN LABORATORIES, INC.,
et al.,

                              Defendants.

## ORDER

This matter is before the Court on UCB Societe Anonyme and UCB Pharma,

Inc.'s (collectively "UCB") Motion to Preclude the Expert Report and Proposed

Hearing Testimony of Mylan's Patent Law Expert [86] and Mylan Laboratories,

Inc. and Mylan Pharmaceuticals, Inc.'s (collectively "Mylan") Motion to Preclude

for Claim-Construction Purposes the Expert Report and Proposed Hearing

Testimony of UCB's Technical Expert [119].

## I.      BACKGROUND

These are patent infringement actions involving UCB Societe Anonyme and

UCB Pharma, Inc.'s (collectively "UCB") epilepsy drug Keppra, containing the active ingredient levetiracetam. Keppra was approved by the Food and Drug Administration ("FDA") based upon a New Drug Application ("NDA") filed by UCB. UCB holds U.S. Patent Nos. 4,837,223 (the "'223 patent") and 4,943,639 (the "'639 patent") for this drug. Mylan filed an abbreviated new drug application ("ANDA"), seeking approval by the Food and Drug Administration ("FDA") to market a generic version of Keppra. In response, UCB sued Mylan for infringement of its patents.

UCB moves to preclude the expert report and proposed <u>Markman</u> hearing testimony of Mylan's patent law expert, John T. Goolkasian, because it is (i) irrelevant, and (ii) intrusive on the Court's responsibility to decide claim-construction issues. Mylan moves to preclude the expert report and proposed <u>Markman</u> hearing testimony of UCB's technical expert, Stephen Graham Davies, because it (i) is impermissible extrinsic evidence, and (ii) contradicts the intrinsic record.

## II.   <u>DISCUSSION</u>

Rule 702 of the Federal Rules of Evidence provides:

> If scientific, technical, or other specialized knowledge will
> assist the trier of fact to understand the evidence or to
> determine a fact in issue, a witness qualified as an expert
> by knowledge, skill, experience, training, or education,
> may testify thereto in the form of an opinion or otherwise,
> if (1) the testimony is based upon sufficient facts or data,
> (2) the testimony is the product of reliable principles and
> methods, and (3) the witness has applied the principles
> and methods reliably to the facts of the case.

To exercise properly its role as a gatekeeper to the admission of scientific

testimony, the Court must consider whether (i) the expert is qualified to testify

regarding the matters he intends to address, (ii) the expert's methodology is

sufficiently reliable under Daubert, and (iii) the expert's testimony assists the trier of

fact to understand the evidence or to determine a fact in issue.  Quiet Tech. DC-8,

Inc. v. Hurel-Dubois UK Ltd., 326 F.3d 1333, 1340-41 (11th Cir. 2003).  Here,

each moving party focuses on the third element in its respective motion to preclude.

    A.    UCB's Motion to Preclude Expert Report and Proposed Hearing
            Testimony of Mylan's Patent Law Expert Mr. Goolkasian

Because the Court must decide claim construction as a matter of law, and

such a determination is made from the perspective of a person of ordinary skill in

the relevant art, UCB argues that testimony from a patent law attorney -- such as

Mr. Goolkasian -- is not relevant.  Mylan claims Mr. Goolkasian's testimony

regarding the United States Patent and Trademark Office's ("Patent Office")

practices and procedures and the prosecution history of the patents-in-suit will be

relevant to claim construction.

"An infringement analysis, whether literal or under the doctrine of

equivalents, requires two steps:  (1) construction of the claims to determine the

scope and meaning of the asserted claims; and (2) comparison of the properly

construed claims with the allegedly infringing device."  Deering Precision

Instruments, L.L.C. v. Vector Distrib. Sys., Inc., 347 F.3d 1314, 1321 (Fed. Cir.

2003).  The first step of the analysis -- claim construction -- is a question of law for

the court.  In constructing a claim, a court looks initially only at intrinsic evidence,

including the claims themselves, the specification, and the prosecution history[1], if it

_____

[1] The prosecution history:
> contains the complete record of all the proceedings
> before the Patent and Trademark Office, including any
> express representations made by the applicant regarding
> the scope of the claims.  As such, the record before the
> Patent and Trademark Office is often of critical
> significance in determining the meaning of the claims.

Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1582-83 (Fed. Cir. 1996)
(quotation and citation omitted).  "The prosecution history limits the interpretation
of claim terms so as to exclude any interpretation that was disclaimed during
prosecution."  Southwall Tech., Inc. v. Cardinal IG Co., 54 F.3d 1570, 1576 (Fed.
Cir. 1995).

is presented, and examines how a person of ordinary skill in the art would have understood the claim terms at the time of the invention.  Phillips v. AWH Corp., 415 F.3d 1303 (Fed. Cir. 2005); Pfizer, Inc. v. Teva Pharms. USA, Inc., 429 F.3d 1364, 1372-73 (Fed. Cir. 2005).  A court should turn to extrinsic evidence only when the intrinsic evidence is insufficient to establish the clear meaning of the asserted claim.  Zodiac Pool Care, Inc. v. Hoffinger Indus. Inc., 206 F.3d 1408, 1414 (Fed. Cir. 2000).

UCB moves to preclude Mr. Goolkasian's expert report and hearing testimony on the grounds that he is an expert in patent law and cannot aid the Court in constructing the claims from the perspective of a person of ordinary skill in the relevant art.  UCB focuses on the third prong of the Court's Rule 702 analysis; UCB does not attack Mr. Goolkasian's competence to testify as an expert in patent law, nor does it argue his methods are unreliable.[2]

---

[2]   The record shows Mr. Goolkasian has over twenty-five years of experience working in the Patent Office, and he served as an Administrative Patent Judge.  The Court's independent review of this evidence indicates he is qualified to testify as an expert regarding the Patent Office's practices and procedures, and also indicates his methodology on this topic is sufficiently reliable.  (See Goolkasian Expert Report, attached as Ex. B to UCB's Mot. to Preclude; Mylan's Resp. to UCB's Mot. to Preclude at 7.)

Mr. Goolkasian's expert report indicates he intends to testify on a variety of topics, including, *inter alia*:

- Patent Office procedures and policies;

- The patent applicant's duty of candor to the Patent Office; and

- The prosecution histories of the patents-in-suit.

(Goolkasian Expert Report ¶ 8.)  Mylan argues Mr. Goolkasian should be permitted to testify at the <u>Markman</u> hearing because he "will be offering testimony and conclusions regarding procedures and standards of practice, and whether or not UCB disavowed subject matter during prosecution of its patent applications. This information and insight is both relevant and admissible."  (Mylan's Resp. to UCB's Mot. to Preclude at 14.)  Mylan claims "Mr. Goolkasian's expert report and testimony will only assist the Court in its review of the administrative record created between the Patent Office and UCB during prosecution of the patent in suit."  (<u>Id.</u> at 3.)

Mylan intends to offer Mr. Goolkasian's testimony on issues of fact, such as the Patent Office's procedures and policies and the prosecution histories of the patents-in-suit.  The prosecution history is "often of critical significance in determining the meaning of the claims," and can "limit[] the interpretation of claim

terms so as to exclude any interpretation that was disclaimed during prosecution."

Southwall Tech., Inc., 54 F.3d at 1576; Vitronics Corp., 90 F.3d at 1582-83.

Because the Court should consider prosecution history if it is presented during

claim construction, Mr. Goolkasian's testimony regarding the prosecution history

of the patents-in-suit has the potential to assist the Court to understand evidence

and facts in issue.  See Endress & Hauser, Inc. v. Hawk Measurement Sys. Pty.

Ltd., 122 F.3d 1040, 1042 (Fed. Cir. 1997) ("[T]he trial court has wide latitude in

the kinds of aids, including testimony of witnesses, employed to assist in the job of

claim interpretation as a matter of law."); see, e.g., Reiffin v. Microsoft Corp., 270

F. Supp. 2d 1132, 1145-46 (N.D. Cal. 2003) ("In the context of patent suits, the

court may consider the expert testimony of a patent attorney if relevant.").  To the

extent Mr. Goolkasian limits his testimony at the Markman hearing to such issues of

fact about which he possesses a special expertise as a patent lawyer, his testimony

is admissible.

       However, Mr. Goolkasian's testimony must be limited to issues of fact,

including the relationship and obligations of patent lawyers to the Patent Office and

how to interpret information in the prosecution history.  The Federal Circuit has

"noted the impropriety of patent lawyers testifying as expert witnesses and giving

their opinion regarding the proper interpretation of a claim as a matter of law, the

ultimate issue for the court to decide."  Id.; see also Brunswick Corp. v. United

States, 34 Fed. Cl. 532, 541 (Fed. Cl. 1995) ("[S]ince claim construction is a

question of law, testimony of a patent expert as to claims' interpretations is merely

a legal opinion entitled to no deference by the court.") (citing Markman v.

Westview Instruments, Inc., 52 F.3d 967, 983, 986 (Fed. Cir. 1995).  To the extent

Mylan intends to introduce Mr. Goolkasian's testimony regarding purely legal

issues, such as his interpretation of a claim[3], this testimony is precluded.

The Court notes it makes these rulings regarding Mr. Goolkasian's testimony

without the benefit of the context in which his testimony will appear.  The Court

reserves the right to consider further proffers of his testimony, and objections

thereto, at the Markman hearing.

      B.     Mylan's Motion to Preclude for Claim-Construction Purposes the
              Expert Report and Proposed Hearing Testimony of UCB's Technical
              Expert Stephen Graham Davies

---

[3] Mylan states "Mr. Goolkasian can also properly offer his opinions and
conclusions regarding claim construction."  (Mylan's Resp. to UCB's Mot. to
Preclude at 11.)
.

Mylan argues the testimony of Dr. Stephen Graham Davies, UCB's technical expert, should not be admitted at the Markman hearing because (i) he provides only extrinsic evidence which is improper where, as here, the intrinsic record unambiguously defines the disputed term, and (ii) his interpretation of the disputed claim term is inconsistent with the meaning of the claim term as defined by the intrinsic evidence.  Mylan offers to withdraw its technical expert from the Markman proceeding if the Court precludes Dr. Davies from testifying.

In constructing a claim, a court looks initially only at intrinsic evidence, including the claims themselves, the specification, and the prosecution history, if it is presented, and examines how a person of ordinary skill in the art would have understood the claim terms at the time of the invention.  Phillips v. AWH Corp., 415 F.3d 1303 (Fed. Cir. 2005); Pfizer, Inc. v. Teva Pharms. USA, Inc., 429 F.3d 1364, 1372-73 (Fed. Cir. 2005).  A court should turn to extrinsic evidence only when the intrinsic evidence is insufficient to establish the clear meaning of the asserted claim.  Zodiac Pool Care, Inc. v. Hoffinger Indus. Inc., 206 F.3d 1408, 1414 (Fed. Cir. 2000).

Here, the disputed claim term is "substantially free of."[4]  Mylan claims "UCB told the PTO, and consequently the public, that 'substantially free of' means 'excludes' when procuring its patent over the prior art."  (Mylan's Mot. to Preclude at 10.)  In response, UCB argues it "did not 'clearly and unambiguously' disclaim the ordinary and accustomed meaning of 'substantially free' as it would be understood to one of skill in the art."  (UCB's Opp'n to Mylan's Mot. to Preclude at 2.)  UCB argues that because the prosecution history does not clearly and unambiguously define "substantially free" in a way different from its ordinary meaning, the Court should consider extrinsic evidence, including the testimony of Dr. Davies.  (Id. at 8.)  In its Reply Brief, Mylan argues Dr. Davies' definition "ignores the intrinsic record, arbitrarily limits the skilled person to NMR and a 5% detection limit, and analyzes the technology limited to a time six years before issuance of the patent.  Each one of these is a fatal defect in his analysis . . . ." (Mylan's Reply Br. at 8-9.)

_____

[4]  UCB claims, and Mylan does not dispute, that Dr. Davies is qualified to give his opinion on this matter.  UCB represents Dr. Davies is currently a Professor of Chemistry at the University of Oxford, England, and has published nearly 400 articles in the relevant academic fields.  Dr. Davies appears qualified to opine on the issue before the Court.  (See UCB's Opp'n to Mylan's Mot. to Preclude at 4-5.)

Mylan's specific concerns regarding Dr. Davies' testimony -- including that he ignored the intrinsic record, arbitrarily limited the skilled person, and limited analysis of technology to an improper period of time -- are concerns ideally suited to cross examination at the hearing, and the Court will consider these alleged defects in his testimony in the context of the hearing.

In their briefing on Mylan's motion to preclude Dr. Davies' testimony, the parties present arguments regarding whether extrinsic evidence is necessary in this case and whether Dr. Davies' testimony conflicts with the intrinsic record, which are substantially similar to those presented in their claim-construction briefing. (See, e.g., Mylan Defs.' Reply Br. on Claim Construction [100]; UCB's Resp. to Defs.' Opening Brs. in Support of its Proposed Construction of Patent No. '639 [98].)  If, after evidence and argument are heard at the Markman hearing, the intrinsic evidence is sufficient to establish an unambiguous meaning for the disputed term, then the Court will not consider the testimony of the parties' technical experts.  See Zodiac Pool Care, Inc., 206 F.3d at 1414.  However, because the Court cannot determine at this time whether the prosecution history unambiguously

limits the claim[5], or whether the Court will require extrinsic evidence to interpret the

disputed term, preclusion of the parties' technical experts is not warranted at this

time.  If appropriate, Mylan may file a motion to exclude Dr. Davies' expert report

and hearing testimony after the <u>Markman</u> hearing.

## III.  <u>CONCLUSION</u>

For the reasons stated above,

**IT IS HEREBY ORDERED** that UCB's Motion to Preclude the Expert

Report and Proposed Hearing Testimony of Mylan's Patent Law Expert [86] is

**GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED** that Mylan's Motion to Preclude for Claim-

Construction Purposes the Expert Report and Proposed Hearing Testimony of

UCB's Technical Expert [119] is **DENIED**.

---

[5] "An ambiguous disclaimer, however, does not advance the patent's notice function or justify public reliance, and the court will not use it to limit a claim term's ordinary meaning.  There is no 'clear and unmistakable' disclaimer if a prosecution argument is subject to more than one reasonable interpretation, one of which is consistent with a proffered meaning of the disputed term."  <u>SanDisk Corp. v. Memorex Prods., Inc.</u>, 415 F.3d 1278, 1287 (Fed. Cir. 2005); <u>see also</u> <u>Phillips</u>, 415 F.3d at 1317 ("[B]ecause the prosecution history represents an ongoing negotiation between the PTO and the applicant, rather than the final product of that negotiation, it often lacks the clarity of the specification and thus is less useful for claim construction purposes.").

**SO ORDERED**, this 2nd day of March, 2006.


_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE